

**FILED**

JUL 2 1 2014

Clerk, U.S. District Court
District Of Montana
Great Falls

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| PHILLIPS 66 PIPELINE LLC, f/k/a CONOCOPHILLIPS PIPE LINE COMPANY, Plaintiff, | Cause No. CV-11-00001-SEH |
| vs. | |
| Easement and Right-of-Way Across: | |
| T 36 N, R11W, MPM, Section 16: SE1/4NE1/4 Section 15: SW 1/4NW1/4 | |
| T33N, R6W, MPM, Section 9: N2SE1/4, NE1/4, NE1/4SW1/4, SE1/4SE1/4 Section 10: SW1/4, W1/2W1/2SE1/4 Section 15: N1/2NE1/4NW1/4, N1/2SW/14NE1/4NW1/4, SE/14NE1/4NW1/4, SE1/4SW1/4NE1/4NW1/4, W1/2NW1/4NE1/4 | **JUDGMENT AND FINAL DECREE OF CONDEMNATION** |
| T37N, R13W, MPM, Section 10: S1/2N1/2NE1/4, SE1/4, SE1/4NE1/4, SW1/4NE1/4 Section 6: E1/2SW1/4, NW1/4SW1/4, SE 1/4NW1/4, SW1/4NW1/4, SW1/SW1/4 Section 7: NE1/4NW1/4, NW1/4NW1/4 | |
| in Glacier County, Montana, Consisting of Approximately 28.43 Acres, | |
| BEVERLY KITTSON, et al., UNITED STATES OF AMERICA, and UNKNOWN OWNERS, | |
| Defendants. | |

Upon consideration by the Court of the following:

a.      Complaint (Doc. No. 1);

b.      First Amended Complaint (Doc. No. 41);

c.      Second Amended Complaint (Doc. No. 105);

d.      Defendant United States of America's Answer to Plaintiff's Second
        Amended Condemnation Complaint (Doc. No. 109);

e.      Entry of Default (Doc. No. 135);

f.      Motion for Entry by Default of Preliminary Condemnation Order per
        Mont. Code Ann. § 70-30-206 (Doc. No. 167);

g.      Preliminary Condemnation Order per Mont. Code Ann. § 70-30-206
        (Doc. No. 171);

h.      Stipulation and Consent to Judgment by and between Phillips 66
        Pipeline LLC and the United States of America (Doc. No. *187*);

i.      The testimony and evidence presented in open court at the trial held
        on July 21, 2014, to determine fair compensation to be awarded
        herein; and

j.      The record in this matter,

**THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:**

**FINDINGS OF FACT**

1.      The Defendants and a description of the real property subject to this

condemnation action (the "Subject Property") are as follows:

| Defendant | Map and Description of Subject Property | Allotment No. |
|---|---|---|
| Geraldine Funk, Janice A. McDowell, Alger W. Swingley, Meade J. Swingley, Reed M. Swingley, Steven M. Swingley, United States of America, and Unknown Owners | Exhibit A | #1142 |

2.     Phillips 66 Pipeline LLC f/k/a ConocoPhillips Pipe Line Company ("Phillips 66"), Plaintiff herein, operates more than 18,000 miles of pipelines in the United States and owns or operates 39 finished-product terminals, five liquified petroleum gas terminals, ten crude oil terminals, and one petroleum coke exporting facility.   Phillips 66 transports both raw and finished petroleum products, including crude oil, propane, gasoline, diesel, and jet fuel.  Phillips 66 is a common carrier under the laws of the United States, and is regulated by the Federal Energy Regulatory Commission.

3.     Within the State of Montana, Phillips 66 owns, operates, and/or manages more than 1427 miles of pipelines and numerous facilities relating to the transportation of crude petroleum and the products of crude petroleum (collectively "Petroleum") thereof for hire, and is otherwise engaged in the

business of transporting Petroleum by pipelines to distributing, refining, and marketing centers and reshipping points located within the State of Montana.

4.     Phillips 66 has consented to the regulatory jurisdiction of the Montana Public Service Commission.

5.     As it relates to this action, Phillips 66 is the owner and operator of three crude oil pipelines located in Glacier County, Montana that cross the Subject Property and are generally described as follows (collectively the "Pipelines"):

a.     8" diameter crude oil pipeline commonly known as the "Glacier 8 inch Canadian to Roundup Border" (the "8" Pipeline");

b.     12" diameter crude oil pipeline commonly known as the "Glacier 12 inch Canadian Border to Billings" (the "12" Pipeline"); and

c.     12" diameter crude oil pipeline commonly known as the "Glacier 12 inch Loop Murphy to Cut Bank" (the "12" Loop Pipeline").

6.     Phillips 66 filed this action in order to condemn a right-of-way a cross the Subject Property for the benefit of  Phillips 66, its successors and assigns, to survey, lay, construct, operate, maintain, inspect, patrol, test, protect, increase or decrease the capacity of, change the characteristics and capabilities of, repair, rebuild, replace, remove and remediate the Pipelines, and for such other uses and purposes as the law may require of an owner and operator of crude oil pipelines, together with the right to install, replace, renew, convert and relocate on, across, or over its easement and right of way for transportation, storage, and

pumping structures, as the foregoing currently exist or may hereafter be located, along with roads, trails, tracks, paths, adjoining property, airspace, and other routes and means needed to access the Pipelines by ground or aeronautically for each and every one of the foregoing purposes, reasons and uses (collectively the "Easement Use") under the power of eminent domain.

    7.     Phillips 66 seeks to condemn the following easements across, over and under the Subject Property (collectively the "Easements"):

       a.    **8" Pipeline**: an easement 50 feet wide, 25 feet on either side of the centerline of the 8" Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 8" Pipeline, for the Easement Use;

       b.    **12" Pipeline**: an easement 60 feet wide, 30 feet on either side of the centerline of the 12" Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 12" Pipeline, for the Easement Use; and

       c.    **12" Loop Pipeline**: an easement 40 feet wide, 20 feet on either side of the centerline of the 12" Loop Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 12" Loop Pipeline, for the Easement Use.

    8.     The term of the Easement Phillips 66 seeks to condemn is for so long as Phillips 66, its successors and assigns, use the Pipelines or any portion thereof. The Pipelines are made of carbon steel and are cathodically protected, which prevents corrosion of the lines and extends their life expectancy.  With proper maintenance, the Pipelines have a general life expectancy of 100 years or more

before the need for improvements. With proper maintenance and improvements, the Pipelines can last in perpetuity. The Pipelines provide access to southern Canadian crude oil, which is important to the Billings refining center, including Phillips 66 Company and ExxonMobil, and will be so for the foreseeable future. Alternate pipelines do not have sufficient capacity to keep the Billings refining center supplied.

9.      The Subject Property consists of allotted lands located within the exterior boundaries of the Blackfeet Indian Reservation, Glacier County, Montana. The Defendants are the beneficial Indian owners of that portion of the Subject Property consisting of allotted lands, being the heirs, devisees and successors to the original allottees under the General Allotment Act.

10.     On September 18, 1961 (8" Pipeline), June 30, 1967 (12" Pipeline), and September 6, 1972 (12" Loop Pipeline), Phillip 66's predecessors in interest obtained right-of-way grants approved by the Secretary of the Interior, by and through the Bureau of Indian Affairs ("BIA"), for the Pipelines (the "Original Right-of-Way Grants").

11.     Because the Original Right-of-Way Grants were expiring, Phillips 66 started the process of obtaining renewal right-of-way grants for the Pipelines by working directly with the Blackfeet Tribe of Indians (the "Tribe") and the

individual allotees in order to obtain consensual easements.  Phillips 66 obtained

consensual renewals of the Original Right of Way Grants from the Tribe and the

vast majority of allottees holding an interest in the allotments (the "Right-of-way

Renewal").    An effort to obtain the Subject Property interest sought to be taken in

this matter was made by submission of written offers to the Defendants by

Phillips 66.  The Defendants rejected the written offers and did not consent to the

Right-of-way Renewal.

    12.    The Pipeline routes were surveyed and platted by Phillips 66's

predecessors in interest in connection with the Original Right-of-Way Grant.  The

Pipelines run linearly and predominantly in a straight line from intake to endpoint.

Pursuant to industry standards, absent environmental matters, geographical

impediments (including population centers), and related matters, oil and gas

pipeline routes are designed and established linearly in order to reduce

construction and material costs, operating costs, collective burdens on real

property (such as easements, rights-of-ways, etc) surface damages, and the like.

    13.    The Subject Property is suitable for the Pipelines and presents no

special or unique risks associated therewith.

    14.    The Original Right-of-Way Grants were consented to by the allottees

holding beneficial interests therein and were approved by the BIA as being in the

best interest of the allottees. The Defendants either consented to the Original Right-of-Way Grants or obtained an interest in the Subject Property subject to the Original Right-of-Way Grants.

15.     The Pipelines are buried to a depth of 2.5 feet to 4 feet. The Subject Property is agricultural land, and the Pipelines do not materially interfere with agricultural uses of the Subject Property.

16.     Prior to entering into the Right-of-way Renewal with the Tribe and the allottees, Phillips 66 evaluated the feasibility of building around the Reservation as an alternative to the Right-of-way Renewal. Based upon this evaluation, Phillips 66 determined that the least costs and the least private injury resulted from the continued operation of the Pipelines in place.

17.     The costs of removing that portion of the Pipelines crossing the Subject Property and building new pipelines around the Subject Property are estimated to be approximately $1,000,000.00 per mile per line (a total of approximately $3,000,000.00 per mile for the Pipelines). Based upon a route paralleling the boundaries of the Subject Property, build-around costs of the Subject Property would be in excess of $2,000,000.00. This figure does not include the costs of interrupted services. Additionally, building around the Subject Property would require obtaining all necessary governmental permits and

consensual agreements from other affected allottees, and if such agreements cannot be obtained, additional condemnations actions similar to this matter. The direct and indirect costs associated with building around the Subject Property, compared to the appraised value of the Subject Property, would be substantial for the public.

18.    The widths of the Easement match the widths of the Original Right of Way Grants and are the minimum widths necessary for Phillips 66 to properly operate and maintain the Pipeline.

19.    Access easements to the Pipelines are necessary for inspection, maintenance and repair of the Pipelines and public safety access thereto

20.    The Subject Property is not already used for a public purpose.

21.    The Subject Property was appraised by Norman H. Lee as of August 19, 2011, which, with the exception of Steven Swingly, is the date the Defendants were served with the Notice of Condemnation.[1]   Mr. Lee is a Certified General Appraiser, a Senior Right-Of-Way Professional, and a certified member of the International Right-Of-Way Association.  Mr. Lee prepared a detailed appraisal of the Subject Property (the "Appraisal").   The purpose of the Appraisal was to

---

[1] Steven Swingley was served with the Notice of Condemnation on September 2, 2011.

determine the market value of the Easement as of the date the Defendants were served with the Notice of Condemnation.

22.    The present and historical use of the Subject Property is for agricultural production.  There is no zoning and no market demand for more intensive use.  There is no other use that is physically possible, financially feasible and maximally productive than use as agricultural property.  In Mr. Lee's expert opinion, the highest and best use for the Subject Property is for agricultural production.

23.    Based on the Appraisal, and in Mr. Lee's expert opinion, the fair market value of the Easement, is $1,450.00.  Accordingly, the just compensation to be awarded for the diminution in value to the Subject Property is $1,450.00 (the "Just Compensation").  Defendants are the beneficial owners of the Subject Property, and each holds a fractional interest in the same.  Defendants are entitled to share in the Just Compensation according their proportionate share in the Subject Property.

## CONCLUSIONS OF LAW

Based upon the forgoing FINDINGS OF FACT, the Court hereby makes the following CONCLUSIONS OF LAW:

1.      Condemnation of allotted lands is a federal question under 25 U.S.C. § 357, raising federal jurisdiction under 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(a), and in the Great Falls Division under Local Rule 1.11(a).

2.      Federal law permits the condemnation of the Subject Property, and provides: "Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."  25 U.S.C § 357.  Montana's eminent domain laws provide the substantive law for this matter, and allow the taking of allotted lands.  Mont. Code Ann. § 70-30-103(1)(a).

3.      Phillips 66 has the burden of proof under Mont. Code Ann. § 70-30-111, which provides:

> Before property can be taken, the condemnor shall show by a preponderance of the evidence that the public interest requires the taking based on the following findings:
>
> (1)  the use to which the property is to be applied is a public use pursuant to 70-30-102;
>
> (2)  the taking is necessary to the public use;

(3)   if already being used for a public use, that the public use for which the property is proposed to be used is a more necessary public use;

(4)   an effort to obtain the property interest sought to be taken was made by submission of a written offer and the offer was rejected.

### FIRST ELEMENT UNDER
### MONT. CODE ANN. § 70-30-111

4.      Eminent domain is the right to take private property for a public use. Mont. Code Ann. § 70-30-101.   The Montana Legislature has declared those categories of uses identified in Mont. Code Ann. § 70-30-102 as being public uses sufficient to warrant the taking of private property.   *Montana Talc Co. v. Cyprus Mines Corp.*, 748 P2d 444, 447-448 (1987).   Under Montana law, "[t]he right of eminent domain may be exercised for the following public uses: [c]ommon carrier pipelines as provided in 69-13-104."   Mont. Code Ann §70-30-102(20).

5.      Phillips 66 is a common carrier pipeline under Mont. Code Ann. § 69-13-101, and has the power of eminent domain.   Mont. Code Ann § 69-13-104.; *See also* Mont. Code Ann §70-30-102(20).

### SECOND ELEMENT UNDER
### MONT. CODE ANN. § 70-30-111

6.      The taking is necessary to the public use.   Mont. Code Ann. § 70-30-111 (2).   The Montana Supreme Court has held that "'[n]ecessary,' in the context of eminent domain, does not mean absolute or indispensable, but reasonable,

requisite, and proper for the accomplishment of the intended objective." *Park County v. Adams*, 100 P.3d 640, 643 (Mont. 2004). The locations of the Pipelines are reasonable, requisite, and proper, and therefore necessary for the public use. *State v. Standley Bros.*, 699 P. 2d 60, 62 (Mont. 1985).

7.    Montana law allows the condemnation of an easement "for as long as the interest is necessary for the purpose described in the complaint." Mont. Code Ann. § 70-30-104(1)(c). The term of the Easement is the minimum necessary for the public use.

8.    The Easement widths match the Original Right of Way Grant and each subsequent renewal thereof and are the minimum width necessary for Phillips 66 to properly operate and maintain the Pipelines and are, therefore, necessary for the public use. *Cenex Pipeline LLC v. Fly Creek Angus*, 971 P.2d 781, 786 (Mont. 1998).

9.    Phillips 66 seeks to condemn access easements 20 feet wide across roads, trails, tracts, paths located on the Subject Property and the airspace above the Pipelines across the Subject Property. The access easements are necessary for the Easement Use, including without limitation the inspection, maintenance and repair of the Pipelines and public safety access thereto. *Cenex Pipeline LLC v. Fly Creek Angus*, 971 P.2d 781, 785 (Mont. 1998).

13

## THIRD ELEMENT UNDER
## MONT. CODE ANN. § 70-30-111

10.    The third element of Section 70-30-111 is a determination of whether the Subject Property is already subject to a public use.  Mont. Code Ann. § 70-30-111(3).  The Subject Property is not already being used for a public use.

## FOURTH ELEMENT UNDER
## MONT. CODE ANN. § 70-30-111

11.    The final element of Section 70-30-111 looks at Phillips 66's efforts to obtain the Subject Property through consensual agreements, and reads:  "[A]n effort to obtain the property interest sought to be taken was made by submission of a written offer and the offer was rejected."  Mont. Code Ann. §70-30-111 (4).  An effort to obtain the Subject Property interest sought to be taken herein was made by submission of the Written Offers to the Defendants by Phillips 66.   The Defendants either rejected the Written Offers or the Written Offers were rejected as a matter of law.  25 C.F.R. ¶ 169.3.

## FAIR COMPENSATION

12.    Compensation for the property taken is governed by Mont. Code Ann. § 70-30-302, which provides in part:

(1) For the purpose of assessing compensation, the right to compensation is considered to have accrued at the date of the

service of the summons, and the property's current fair market value as of that date is the measure of compensation for all property to be actually taken and the basis of depreciation in the current fair market value of property not actually taken but injuriously affected....

(2)     If an order is made allowing the condemnor to take possession... the full amount finally awarded must draw interest at the rate of 10% a year from the date of the service of the summons to... [t]he date on which the right to appeal to the Montana supreme court expires or, if an appeal is filed, the date of final decision by the supreme court....

                                    ***

(4)     None of the amount finally awarded draws interest after the date on which the right to appeal to the Montana supreme court expires.

13.     Phillips 66 has established the fair market value of the Easement as of the time of service of the Condemnation Notice through the Appraisal and expert testimony of Mr. Lee in the amount of $1,450.00 total. *Dept. of Transportation v. Simonson*, 87 P.3d 416, 419-420 (Mont. 2004). The Fair Compensation shall be

distributed to the Defendants in proportion to their beneficial interest in the Subject Property.

NOW, **THEREOFRE,** in accordance with the forgoing,

**IT HIS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

A.     Phillips 66 Pipeline LLC, its successors and assigns, are hereby granted easements and rights-of-way to survey, lay, construct, operate, maintain, inspect, patrol, test, protect, increase or decrease the capacity of, change the characteristics and capabilities of, repair, rebuild, replace, remove and remediate the Pipelines, and for such other uses and purposes as the law may require of an owner and operator of crude oil pipelines, together with the right to install, replace, renew, convert and relocate on, across, or over its easements and rights-of-way transportation, storage, and pumping structures, the Pipelines as they currently exist or may hereafter be located, along with roads, trails, tracks, paths, adjoining property, airspace, and other routes and means needed to access the Pipelines by ground or aeronautically for each and every one of the foregoing purposes, reasons and uses (each of the foregoing purposes, reasons and uses relating to the Pipelines, easements, and rights-of-way and the associated access easements and rights-of-way are hereinafter referred to collectively as the "Easement Use");

B.     The scope of the Easement shall consist of:

1.     **8" Pipeline**: an easement 50 feet wide, 25 feet on either side of the centerline of the 8" Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 8" Pipeline, for the Easement Use;

2.     **12" Pipeline**: an easement 60 feet wide, 30 feet on either side of the centerline of the 12" Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 12" Pipeline, for the Easement Use; and

3.     **12" Loop Pipeline**: an easement 40 feet wide, 20 feet on either side of the centerline of the 12" Loop Pipeline as it currently exists or may hereafter be located, along with 20 foot wide access roads, trails, tracks, paths, adjoining property, and the airspace above the 12" Loop Pipeline, for the Easement Use.

C.     That the term of the Easement shall be for so long as Phillips 66 Pipeline LLC, its successors and assigns, use the Pipelines or any portion thereof.

D.     The Pipelines and access routes under the Easement shall be initially located as identified on Exhibit A attached hereto.

E.     Just compensation to be awarded for the taking of the Easement is $1,450.00, with interest thereon at the legal rate of $10% per annum ($.40 per diem) from and after Augusts 19, 2011 until such time as the right to appeal this Judgment has expired.  Defendants are entitled to share in the forgoing amount according to their proportionate beneficial interest in the Subject Property.

F.     Said compensation shall be paid by Phillips 66 Pipeline LLC directly to the Clerk of Federal District Court for distribution to Defendants through their Individual Indian Money Account by the Bureau of Indian Affairs.

G.     The Clerk of Federal District Court is directed to close the file.

Dated this 21st day of July , 2014.

_____
HON.    SAM E. HADDON
United States District Court Judge

